IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WADA DOGO THIAM,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. C 17-03560 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security action, plaintiff appeals the denial of disability benefits. For the reasons stated herein, plaintiff's motion for summary judgment is **DENIED** and the Acting Commissioner's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

**1. PROCEDURAL HISTORY.**

On July 25, 2013, plaintiff Wada Dogo Thiam applied for disability insurance benefits and supplemental security income alleging she has been unable to work since January 1, 2013, due to high blood pressure, diabetes, asthma, memory loss, diabetic neuropathy, arthritis, anxiety, and trouble sleeping (AR 190). Her application was denied both initially and upon reconsideration (AR 99, 106). A request for an administrative hearing, though filed late, was granted (AR 112, 115, 116).

On September 1, 2015, Thiam had a hearing before the ALJ (AR 31–45). The ALJ rendered a decision on September 22, 2015, finding that Thiam was not disabled (AR 24).

Thiam requested administrative review, and the Appeals Council denied the request on April 26, 2017 (AR 1, 8–10). Thiam filed this action on June 20, 2017, seeking judicial review pursuant to Section 405(g) of Title 42 of the United States Code. The parties now cross-move for summary judgment.

### 2. MEDICAL EVIDENCE.

The medical evidence was summarized in the ALJ's decision (AR 19–23). This order will also briefly review both Thiam's self-reported symptoms and the medical opinion evidence.

#### A. Self-Reported Symptoms.

Thiam reported symptoms including whole-body pain, especially in her arms, legs, and right knee; left foot weakness with possible radiculopathy; constant swelling in her legs and arms; swelling in her legs if she sits for any length of time; burning on both sides of her feet and inability to walk or stand for long periods due to neuropathy; finger swelling; depression; anxiety; irritability; social withdrawal; tearfulness; forgetfulness; difficulty following written or spoken instructions; getting upset with and fear of others; diminished interest and pleasure in most activities; decreased appetite; inappropriate guilt; diminished concentration and memory; difficulty with stress and change in routine; low energy and motivation; hypervigilance; recurrent and intrusive distressing recollections of a traumatic event; and insomnia (AR 213–23, 247–54, 358–60, 363–95, 441–80).

#### B. Joanna Eveland, M.D.

Dr. Eveland was Thiam's treating physician from July 5, 2011, until October 21, 2013. In her medical source statement, Dr. Eveland indicated that she diagnosed Thiam with diabetes, hypertension, depression, and muscle pain. She described Thiam's prognosis as "fair." She opined that in an eight-hour work day, Thiam could sit, stand, and walk for only one hour each. Furthermore, in an eight-hour work day, Thiam would need to take one additional break per hour, and could never squat, crawl, or climb (AR 364–71).

#### C. Karin Dydell, M.D.

Dr. Dydell was Thiam's treating physician from May 15, 2014, until August 20, 2015. In her medical source statement, Dr. Dydell indicated that she diagnosed Thiam with diabetes,

hypertension, myalgia, and spinal stenosis with bacterial sciatica. She also described Thiam's prognosis as "fair." She opined that in an eight-hour day, Thiam could sit for four hours, but never stand, lift, bend, squat, crawl, climb, or reach above shoulder level. Further, Thiam would be restricted from any activities involving unprotected heights, being around moving machinery, or driving cars (AR 549–52).

### D. Non-Examining Consultants.

Agency consultants reviewed Thiam's medical records. Medical consultant Dr. Lina B. Caldwell concluded that Thiam suffered from diabetes mellitus and hypertension. Both of which she deemed non-severe. Specifically, Dr. Caldwell opined that there was no documented objective medical evidence to support the limitation imposed by Dr. Eveland that Thiam could sit, stand, and walk for only one hour each. Psychological consultant Michael Hammonds, Ph.D., concluded that Thiam suffered from affective disorders but that they posed only moderate restrictions on the activities of daily living, social functioning, concentration, persistence, or pace (AR 46–71).

## ANALYSIS

### 1. LEGAL STANDARD.

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a scintilla," but "less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid.* The Court must "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities;" thus, where the evidence is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Ibid.*

The claimant has the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. § 404.1520. In the first four steps, the ALJ must

determine: (i) whether the claimant is working, (ii) the medical severity and duration of the claimant's impairment, (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4, and (iv) whether the claimant is capable of performing his or her previous job; step five involves a determination of whether the claimant is capable of making an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(i)–(v). In step five, "the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040.

### 2. THE ALJ'S FIVE-STEP ANALYSIS.

At step one, the ALJ found that Thiam had not engaged in substantial gainful activity since January 1, 2013 (AR 16).

At step two, the ALJ found Thiam suffered from several severe impairments, including degenerative disc disease with foraminal stenosis, diabetes mellitus type 2, and depression. *Ibid.*

At step three, the ALJ found that none of Thiam's impairments or combination of impairments met or equaled any impairment that would warrant a finding of disability without considering age, education, or work experience (AR 17). *See* 20 C.F.R. Pt. 404, Subpart P, App. 1.

Between steps three and four, the ALJ determined Thiam's residual functional capacity. The ALJ found Thiam had the residual functional capacity to perform "Medium Work," except she was further limited to simple, nonpublic work. Specifically, the ALJ found that Thiam's medically determinable impairments could reasonably be expected to cause her self-reported symptoms, but Thiam's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible (AR 18).

At step four, the ALJ found that Thiam could perform past relevant work. The vocational expert testified at the hearing that Thiam's residual functional capacity matched the physical and mental demands to perform her past relevant work as a dollmaker and housekeeper. Those occupations were performed within fifteen years of the date of

adjudication, lasted long enough for Thiam to learn them, and were performed at substantial gainful activity levels. Accordingly, the ALJ decided that Thiam was not disabled (AR 23, 24).

Because the ALJ determined that Thiam was not disabled at step four, the ALJ did not reach step five.

### 3. THE ALJ DID NOT ERR IN HER EVALUATION OF THE MEDICAL OPINION EVIDENCE.

Thiam argues that the ALJ erred by discounting the opinions of her treating physicians. An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ibid.*

Here, the ALJ did not explicitly state that the opinions of Drs. Eveland and Dydell were contradicted, but it is clear from the record that their opinions regarding Thiam's functional limitations were contradicted by the opinion of Dr. Caldwell, the agency medical consultant. Thus, the ALJ needed only specific and legitimate reasons to justify discounting the opinions.

The ALJ offered three reasons for discounting the opinions of Drs. Eveland and Dydell. This order finds that these reasons are specific and legitimate, and supported by substantial evidence in the record.

*First*, the ALJ discounted the opinions because they were "starkly inconsistent with the generally normal objective findings on clinical examination, including little in the way of neurological abnormality." Specifically, the ALJ found that the "objective findings on clinical examination were generally within normal limits, including no edema in the extremities (contrary to subjectively reported constant swelling), intact heel walking, no muscle wasting, generally full motor strength and normal reflexes, no evidence of diabetic retinopathy, appropriate mood and affect, intact orientation, clear and coherent speech, and no suicidal or

5

homicidal ideation or psychotic symptoms" (AR 19). The ALJ determined that these records were inconsistent with the expressed functional limitations of the treating physicians.

Our court of appeals has held that an incongruity between a treating physician's questionnaire responses and a patient's medical records is a specific and legitimate reason for discounting a physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ's determination is thus a specific and legitimate reason to discount the opinions.

*Second*, the ALJ discounted the opinions because they were "heavily based on the claimant's subjective reporting." The ALJ determined — and on appeal Thiam does not dispute — that Thiam's subjective testimony lacked credibility. A review of Drs. Eveland and Dydell's records reveals some independent clinical findings, but the records mostly reflect Thiam's own subjective complaints as they pertain to pain level and functional limitations.

Where a medical opinion is based to a large extent on a claimant's subjective testimony, it may be disregarded where the claimant's testimony has been properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). This too was a specific and legitimate reason to discount the opinions of Drs. Eveland and Dydell.

*Third*, the ALJ discounted the opinions because they were inconsistent with Thiam's "capacity to regularly travel overseas." The treating records indicate that Drs. Eveland and Dydell knew that Thiam frequently traveled to her home country of Senegal (*See, e.g.*, AR 343, 441). Despite this, Dr. Eveland opined that Thiam could only sit, stand, and walk for one hour, and Dr. Dydell opined that Thiam could never sit, stand, or walk in an eight-hour work day. The ALJ's decision to discredit their opinions on this basis was a rational interpretation of the evidence. *See Andrews*, 53 F.3d at 1039. This too was a specific and legitimate reason to discount their opinion.

Thiam makes three additional arguments, none persuasive. *First*, Thiam argues that the ALJ should have acknowledged that a treating physician's opinion is generally preferred over other medical sources. However, no controlling authority requires such an explicit acknowledgment.

*Second*, Thiam argues that the ALJ erred by evaluating the opinions of Drs. Eveland and Dydell in isolation from one another. Consistency with the record is one factor that the ALJ considered, and here the ALJ discounted the opinions because they were inconsistent with the objective medical evidence in the record and were heavily based on Thiam's subjective reporting. Where the evidence is susceptible to more than one rational interpretation — as it is here — the ALJ's conclusion must be upheld. *Andrews*, 53 F.3d at 1041.

*Third*, Thiam argues that the non-examining consultants lacked access to later medical records, and thus they cannot be considered substantial evidence in support of the ALJ's decision. Substantial evidence is "more than a scintilla but less than a preponderance." *Smolen*, 80 F.3d at 1279. Here, the non-examining consultants had access to the complete records up to the date of their opinion, which consequently included the period in which Thiam first claimed disability. This is more than a scintilla of evidence. Moreover, each piece of evidence need not be independently substantial, so long as the ALJ's opinion is supported by substantial evidence — which it is.

In as much as the ALJ gave specific and legitimate reasons for discounting the opinions of Thiam's treating physicians, the ALJ did not err in her analysis of the medical opinion evidence.

## CONCLUSION

For the foregoing reasons, Thiam's motion for summary judgment is **DENIED**. The acting commissioner's cross-motion for summary judgment is **GRANTED**. Judgment will follow.

**IT IS SO ORDERED.**

Dated: May 10, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE